**J. ASHLEE ALBIES, OSB No. 051846**
ashlee@albiesstark.com
**Albies and Stark, LLC**
1500 SW First Avenue, Suite 1000
Portland, OR 97201
Tel: 503/308-4770

**MATTHEW C. ELLIS, OSB No. 075800**
matthew@employmentlawpdx.com
**Matthew C. Ellis, PC**
1500 SW First Avenue, Ste 1000
Portland OR 97201
Tel: 503/345-5407

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **RANDALL BLAZAK**,<br><br>Plaintiff,<br><br>v.<br><br>**PORTLAND COMMUNITY COLLEGE, a public institution of higher education, JENNIFER ERNST, in her individual and capacity; DANA FULLER, in her individual capacity; and KATY HO, in her official capacity.**<br><br>Defendants. | **CASE NO. 3:26-CV-2322**<br><br>**COMPLAINT**<br><br>**Jury Trial Demand** |

## I. JURISDICTION AND VENUE

1. This is an action for damages under 42 U.S.C. § 1983. This court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 28 USC § 1343(3) and (4).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that the claims and events giving rise to this action alleged herein occurred in Portland, Oregon in the County of Multnomah.

**II. PARTIES**

3. Plaintiff, Dr. Randall Blazak, is a citizen of the United States and a resident of the State of Oregon. Dr. Blazak was a part-time Sociology Instructor at Defendant Portland Community College.

4. Defendant Portland Community College ("PCC") is a duly organized public corporation that operates in the City of Portland, Oregon. Defendant PCC is not an instrumentality of the State and is a "person" for purposes of 42 U.S.C. § 1983.

5. At all material times, Defendant Dr. Jennifer Ernst was PCC's Vice President of Academic Affairs. Defendant Dr. Ernst is named in her individual capacity for purposes of Plaintiff's claims for damages and representative capacity for her claims for declaratory and injunctive relief and is a "person" for purposes of 42 U.S.C. § 1983.

6. At all material times, Defendant Dana Fuller was PCC's Program Dean, Social Sciences and Ethnic Studies. Defendant Fuller is named in her individual capacity for purposes of Plaintiff's claims for damages and is a "person" for purposes of 42 U.S.C. § 1983.

7. Defendant Dr. Katy Ho is the current acting President of PCC. Defendant Ho is named in her official and representative capacity, only, for purposes of Plaintiff's Second and Third Claims for Relief. Defendant Ho reports directly to the elected PCC Board of Directors. Defendant Ho implements high level board polices, bylaws and institutional goals. This encompasses the "what" in terms of the college's institutional objectives and goals. Defendant Ho also has final approving authority for all PCC Operating Policies. This encompasses the "how" of overall institutional administration and offers frameworks and detailed instructions for the effective management and execution of college activities at various levels, including divisions, departments, programs, and services. Defendant Ho also has final approving authority for all PCC Procedures. These Procedures define the "who," "what," "when," and "where" of

operational activities and ensure that tasks are carried out in compliance with PCC policies, legal requirements, and best practices.

## III. FACTUAL ALLEGATIONS

8. Defendant Portland Community College ("PCC") employed Plaintiff as a part-time Sociology Instructor from January 2018 until PCC terminated Plaintiff's employment on September 18, 2025.

9. Defendant PCC hired Plaintiff as a part-time Sociology Instructor, with Plaintiff agreeing to teach both in-person classes at PCC's Rock Creek campus and online classes.

10. Plaintiff had previously taught Sociology at both Portland State University ("PSU") and the University of Oregon ("U of O"), beginning his career in higher education at PSU in 1995.

11. Before Defendant PCC hired Plaintiff, Plaintiff was already a well-regarded scholar in the study of both hate crimes and broader social justice issues. Throughout his career, Plaintiff appeared on various national and international media outlets—including NPR, CNN, BBC, and the New York Times—to provide commentary on his areas of expertise. Plaintiff also served as the Chair of the Oregon Coalition Against Hate Crimes since 2002.

12. Sociology is the scientific study of human society, social behavior, and the interactions between groups and institutions. Against that framework, but mostly outside of his work as Sociology instructor at PCC, Plaintiff has accumulated a sizeable social media following, with over 230,000 followers of his Instagram account. Plaintiff regularly uses his social media platform to discuss his work on social justice, far-right extremism, and other sociological topics. Plaintiff also has an account on Substack—a platform that supports publication of independent newsletters, podcasts, and essays—where he publishes a newsletter on racism, the far right, and the rise of authoritarianism titled, The Blazak Report.

13. Plaintiff's teaching style was and is highly trauma informed and deeply rooted in feminist pedagogy, especially when dealing with subject matter like rape culture and misogyny. Additionally, Plaintiff often uses humor to communicate the often-weighty subject matter of

Sociology courses to the college students in his classes.

14. In December 2024, two students reported Plaintiff to Defendant Fuller for sharing what the students characterized as strong opinions about Donald Trump as President. The students claimed Plaintiff strayed off-topic and made statements biased against students who might have voted for Trump. Defendant PCC investigated Plaintiff based on the complaints. During the investigation, Plaintiff explained how discussion arose out of class lecture on how the nomination of a presidential candidate who has been accused of rape reinforces rape culture; a frequent topic in Plaintiff's and other professors' sociology classes.

15. Part of studying sociology, and in academia in general, is having one's preconceived notions and values challenged. Plaintiff regularly told students that he did not evaluate them based on their political stances; a fact he reaffirmed during the allegedly offensive comments referenced above.

16. Defendant Fuller placed Plaintiff on disciplinary probation following the December 2024 complaint for "sharing personal opinions about the outcome of the election" because it "deters students with differing perspective from engaging in class" and for "using your PCC email to send blogs and personal messages" because it "is a violation of PCC policy."

17. Defendant Fuller further directed Plaintiff to avoid sharing "personal opinions that are considered divisive, political thoughts and personal blogs. Consider the impact of your lesson plans and statements on students whose political, religious, gender, socio-economic identities may differ from the majority in the class." She said, "[i]f you make a statement to students or in class that violates the above, or if you have concerns about a statement you made, you will notify me," and required Plaintiff "refrain from communicating your personal social media and feelings about the outcome of elections and politicians, and instead focus on helping students critically analyze the political situation from a sociological perspective." The discipline noted that "Failure to comply with the expectations in this document may result in more serious discipline, including dismissal." That probationary document is attached to the Complaint as Exhibit 1.

18. The probationary period was to last 90 days, with the expectation that Plaintiff would no longer communicate his feelings about the outcome of elections or specific politicians or discuss his social media posts in class.

19. On July 10, 2025, Plaintiff gave a Sociology lecture at PCC on cultural transformation for a Sociology class that included discussion of how sexual norms in society change over time. During the lecture, he jokingly commented on the topic, asking if "fisting" was the now the new "second base." In the same July 10 class, the discussion turned to rap music and its role in the changing norms as it pertains to sex and violence, leading Plaintiff to comment on the controversial early-2000s lyrics of popular rapper, Eminem. In discussing the evolution of sexual norms reflected in rap music, Plaintiff mentioned how the controversial rapper's mainstream songs featured lyrics about "raping and killing [his] mother."

20. On July 17, 2025, in another PCC Sociology class, Plaintiff gave a lecture on rape culture and its sociological impacts. He began the lecture with a content warning due to the sensitive nature of the subject matter. In the context of this lecture on rape culture, Plaintiff examined rape as entertainment on the HBO show, 'Game of Thrones.' During this lecture, Plaintiff mockingly pretended to be a fan of 'Game of Thrones,' making comments about fans of the show who accept rape as a form of entertainment, joking, "I love rape." Also on July 17, Plaintiff told students about his social media accounts during class, specifically mentioning his Instagram account.

21. On July 24, 2025, during a class lecture, Plaintiff told students that if they wanted to hear his personal opinions on the issues being discussed in class, they could look at his Instagram account.

22. Plaintiff did this on July 24, 2025, because he was aware of Defendant PCC's and Fuller's displeasure with how Plaintiff engaged with political issues on social media and was attempting to refrain from devoting class time to his personal views so as to focus their class time more focused on the day's planned content.

23. During a lecture on or about July 31, 2025, for one of Plaintiff's PCC Sociology

course sections, Plaintiff was discussing the Enlightenment and its wide-ranging effects on modern society, modern science, and the underlying principles of the creation of the United States itself. He also stated that his point of view on the subject was informed by the decades he has spent studying hate crimes and far-right extremism. Then, when discussing connections of extremism with Donald Trump and the MAGA movement, Plaintiff said: "There has never been a greater threat, since the civil war, to the founding of the United States of America than Trump and MAGA. I am desperately afraid we are going to cavalcade to a new dark age ruled by an oligarchy. . . That said, your political position is your political position. . . I'm never going to evaluate anybody on any of my classes based on how their political position lines up with mine. . . Some of my best students I have ever had have been my conservative students. But I am not going to shut up about the shit that I care about, but I also want you to know I am not going to evaluate you differently if your values are different than mine or your political agenda is different than mine. I just want to say that. Because one of the first groups Hitler went after when he came to power in 1933 were college professors that were Jewish, Marxist, Socialist or liberal and he knocked them out. . . They were the first targets. But this is a safe space for whatever your political agenda is. Unless you are a Nazi. Then you can fuck off."[1]

24. A few students reported these comments from the summer class to PCC administration. Based on these complaints, Defendant Fuller initiated another investigation into whether Plaintiff was in violation of Defendant PCC's policies. Plaintiff and Defendant Fuller—as well as Plaintiff's union representative and another employee of Defendant PCC—met to discuss the comments in paragraphs 19–23 on August 20 and 22, 2025, respectively.

25. During the meetings on August 20 and 22, 2025, Defendant Fuller and Plaintiff discussed the comments Plaintiff made during classes above that were at issue, as well as Plaintiff's mentioning of his social media during class. Defendant Fuller chastised Plaintiff for continuing to discuss the election and the Trump administration with his Sociology classes, and

[1] See excerpt from class: https://youtu.be/cZKX2OXV6-4?si=UDqREtZdU64gioxU. While, here, the date says July 25, 2025, Plaintiff understands that the date of the actual class was July 31, 2025.

for referencing his social media posts on those topics.

26. During the investigation, Plaintiff explained he was hoping that his students—many of whom are avid users of social media platforms like Instagram and TikTok—would see Plaintiff's use of these platforms as an attempt to engage with them through more digestible means.

27. At the end of the August 22, 2025, meeting, Defendant Fuller stated the complaints of three students led to the investigation. Plaintiff expressed regret that his actions had negatively impacted any students and indicated he was open to making improvements to his approach when discussing triggering and traumatic topics like rape culture, changing sexual norms and the Trump administration.

28. Defendant Fuller and Plaintiff had a follow-up meeting on or about September 12, 2025. During this meeting, Defendant Fuller told Plaintiff that PCC did not consider his comments from class about sexual evolution, rape culture, and Nazis—on July 10, 17 and 31, respectively—protected by the principles of academic freedom. Defendant Fuller said that these comments were unrelated to course curriculum. Plaintiff disagreed, pointing out that these comments were all made within the context of larger class discussions on those same topics.

29. One week after the September 12 meeting, Defendants terminated Plaintiff's employment, effective September 18, 2025. In the termination letter, Defendant Fuller specifically referenced the allegations in paragraphs 19-23 as to why he was being terminated, specifically claiming his comments "are not protected under academic freedom." That Notice of dismissal is attached as Exhibit 2.

30. Defendants also told Plaintiff that he was being terminated for failure to meet directives to not "promote" his social media accounts or communications during the class, even when the social media communications related to the class content, identifying three times where Defendants claim Plaintiff "promoted" himself on social media during class while discussing class material on the same topic. No PCC policies prohibit staff from sharing social media accounts with students.

31. PCC policies do not restrict staff from promoting themselves or, while teaching, referring to statements they made on more traditional, non "social media" platforms. Indeed, it is common for professors to require students to purchase their media as part of the class, whether it be books, plays, films or other media, and incorporate their publications into the class itself.

32. Plaintiff grieved the termination decision to Defendant Ernst. Defendant Ernst affirmed the termination decision, and the specific basis for it, again finding Plaintiff's conduct was not protected by academic freedom. That decision is reflected in Exhibit 3 to the complaint.

33. Defendants' actions were intentional or in deliberate disregard of Plaintiff's First Amendment rights, were under color of state law, and deprived Plaintiff of his Constitutional, federal and state law rights to speak freely under the principles of academic freedom.

34. As a direct and proximate result of Defendants' violations of the United States Constitution and state and federal laws, Plaintiff has suffered lost wages, benefits and employment opportunities, increased tax liability, pre-judgment interest on said losses, emotional distress, mental anguish, injury to his personal and professional reputation, loss of self-esteem and dignity. Plaintiff is also entitled to reinstatement of his employment, or in the alternative, an award of future wages and fringe benefits in an amount to be determined at trial.

35. Plaintiff is entitled to reasonable attorney fees and costs, pursuant to 42 U.S.C. § 1988.

36. Defendants' conduct was carried out with wanton or reckless disregard for Plaintiff's civil rights. Plaintiff seeks punitive damages against the individually named Defendants to deter them from such conduct in the future.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983: First Amendment Retaliation and Viewpoint Discrimination (Against Defendants PCC, Ernst, and Fuller)

37. Plaintiff realleges paragraphs 1 through 36.

38. The public college and university occupy a central place in the law of the First

Amendment. The First Amendment protects the free exchange of ideas. The college and university are primary generators and repositories of ideas, a place in which unfettered academic debate and open discourse promotes the search for truth and prepares students for a discordant world lacking in orthodoxy. When these institutions place limits on what professors may say or impose punishment for the views they express, they destock the marketplace of ideas and imperil future generations who must be exposed to a range of ideas and readied for the disharmony of a democratic society.

39. The government cannot condition public employment on infringement of an employee's constitutionally protected interest in freedom of expression. Likewise, the government cannot engage in viewpoint discrimination, an egregious form of content discrimination. The government cannot regulate speech when the specific motivating ideology, opinion, or perspective of the speaker is the rationale for the restriction.

40. Plaintiff's teaching was pursuant to the official duties of a professor and are constitutionally protected expression if they involve matters of public concern. Plaintiff's teaching referenced above does involve matters of public concern.

41. Defendants deprived Plaintiff of his First Amendment right to engage in free speech, including speech related to scholarship or teaching that is on a matter of public concern and pursuant to his official job duties, by investigating him, limiting his speech, threatening him with termination, and terminating him for his constitutionally protected speech and conduct.

42. Defendants also deprived Plaintiff of his First Amendment right to engage in free speech by directing him to not reference social media posts during class even when the social media posts pertained to the class subject, investigating him, threatening him with termination, and terminating him for this protected conduct.

43. Defendant PCC is liable for the deprivation of Plaintiff's First Amendment rights because the deprivation was pursuant to a PCC custom, policy or practice of prohibiting speech it finds offensive, regardless of whether it is constitutionally protected or not. Further, PCC is liable because the deprivation of Plaintiff's rights was done pursuant to PCC's Standards for

Professional Behavior, which is unconstitutional, or at least unconstitutional as applied to Plaintiff. Plaintiff is entitled declaratory and injunctive relief declaring PCC's Standards for Professional Behavior Policy unconstitutional and enjoining its enforcement.

44. At all material times, Defendant Ernst had final policy making authority for PCC and engaged in the acts alleged herein while acting as a final policymaker for PCC. Thus, PCC is liable for the deprivation of Plaintiff's First Amendment Rights because the unlawful decisions were made or approved by persons in policymaking positions for Defendant PCC.

45. Defendant PCC is liable for the deprivation of Plaintiff's First Amendment rights because, on information and belief, persons in policymaking positions higher than Defendant Ernst ratified the unlawful conduct alleged herein knowing the basis of the unlawful conduct.

## SECOND CLAIM FOR RELIEF

### Facial Overbreadth Challenge to PCC's Standards for Professional Behavior for PCC Employees Policy; First Amendment (Against Defendants PCC and Ho)

46. Plaintiff realleges paragraphs 1 through 45.

47. A policy, rule or regulation violates the First Amendment for overbreadth if a substantial number of its applications are unconstitutional when judged in relation to any plainly legitimate coverage of the policy, rule or regulations.

48. Under PCC's Standards for Professional Behavior Policy, PCC retains the authority to discipline or take action for any conduct that it deems as bullying, berating, intimidating, derogatory, profane, behavior that has the effect of humiliating others, mobbing, or conduct that, in its sole discretion constituted "unprofessional or inappropriate behavior." The full policy can be viewed at the link here: https://www.pcc.edu/hr/contracts/behavior/.

49. PCC's Standards for Professional Behavior Policy is unconstitutional on its face because it results in a substantial number of unconstitutional applications, allowing the College and its administrators to investigate, discipline, threaten and terminate faculty like Plaintiff for speech that is protected by the First Amendment, but expresses a viewpoint that the College

wishes to suppress.

50. For example, the policy would support discipline against a faculty member who, during a class or meeting, made an offhand remark deemed "inappropriate" or "intimidating," or had the "effect of humiliating others" even if that was not the intent of the remark. Likewise, the policy would support discipline against a faculty member who posted an "inappropriate" or "profane" Instagram post criticizing one of the Defendants, a political movement or issue, or any issue Defendants subjectively deem unsavory.

51. By permitting "disciplinary action, up to and including termination" against those whose speech PCC administrators deem "unprofessional" or "inappropriate," even when it does not meet the legal definition of discrimination or harassment, PCC's Standards for Professional Behavior Policy permits a broad range of unconstitutional applications in violation of the First Amendment.

52. As a direct and proximate result of PCC's Standards for Professional Behavior Policy, speakers in the PCC community, including Plaintiff, have suffered irreparable injury, including being deprived of their constitutional rights to free expression. Plaintiff has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing harm to his First Amendment rights.

53. Without declaratory and injunctive relief from this Court, PCC's unconstitutional actions will continue, and Plaintiff and other speakers in the PCC community will suffer irreparable harm indefinitely.

54. As a consequence of Defendants' violation of Plaintiff's and all PCC faculty members' First Amendment rights, Plaintiff is entitled to declaratory and injunctive relief against Defendants Ho and PCC declaring PCC's Standards for Professional Behavior Policy unconstitutional and enjoining its enforcement.

## THIRD CLAIM FOR RELIEF

### Facial Vagueness Challenge to PCC's Standards for Professional Behavior for PCC Employees Policy; First and Fourteenth Amendment

**(Against Defendants PCC and Ho)**

55. Plaintiff realleges paragraphs 1 through 54.

56. A rule, policy or regulation violates the Due Process clause of the Fourteenth Amendment for vagueness if a person of ordinary intelligence cannot distinguish between permissible and prohibited conduct, and when there are no explicit standards to prevent arbitrary and capricious application.

57. Under PCC's Standards for Professional Behavior Policy, PCC retains the authority to discipline or take action for any conduct that it deems as bullying, berating, intimidating, derogatory, profane, behavior that has the effect of humiliating others, mobbing, or conduct that, in its sole discretion constituted "unprofessional or inappropriate behavior." The full policy can be viewed at the link here: https://www.pcc.edu/hr/contracts/behavior/.

58. PCC's Standards for Professional Behavior Policy does not define any of these terms, and those terms do not carry with them any reasonably objective or clear plain meaning. For example, what one person finds "mobbing" another person might consider protest activity. What one deems "unprofessional or inappropriate" another might find the exact opposite.

59. PCC's Standards for Professional Behavior Policy is unconstitutional on its face because it is so vague that it authorizes arbitrary, capricious, and viewpoint-discriminatory application, and fails to provide people of ordinary intelligence a reasonable opportunity to understand what expression is "unprofessional", "inappropriate" or otherwise violated any other prohibitions under the policy.

60. The denial of constitutional rights is an irreparable injury per se, and entitles the Plaintiff to injunctive relief.

61. Plaintiff has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his rights under the First and Fourteenth Amendments.

62. Without declaratory and injunctive relief from this Court, the College's unconstitutional actions will continue, and Plaintiff and other speakers in the College community

will suffer irreparable harm indefinitely.

63. As a consequence of the Defendants' violation of Plaintiff's First and Fourteenth Amendment rights, Plaintiff is entitled to declaratory and injunctive relief against PCC and Defendant Ho declaring PCC's Standards for Professional Behavior Policy unconstitutional and enjoining its enforcement.

**WHEREFORE**, Plaintiff requests a trial by jury and entry of judgment in favor of Plaintiff and against all Defendants for the following relief:

1. On Plaintiff's First Claim for relief, an award of economic damages including lost wages, lost fringe benefits, increased tax liability and pre-judgment interest in an amount to be determined at trial;

2. On Plaintiff's First Claim for relief, an award of damages for mental and emotional distress, damage to reputation, and other compensatory damages in an amount to be determined at trial;

3. On Plaintiff's First Claim for relief against the individual Defendants, punitive damages in an amount to be proved at trial;

4. On all Plaintiff's Claims for relief, reinstatement into his position as Professor of Sociology;

5. On all Plaintiff's Claims for relief, declaratory and injunctive relief declaring PCC's Standards for Professional Behavior Policy unconstitutional and enjoining its enforcement against Plaintiff and others;

6. Such further or alternative relief in favor of Plaintiff as the Court deems appropriate;

7. On all Plaintiff's Claims for relief, an award of attorney fees, costs and

disbursements.

DATED this 22nd day of October, 2026.

By /s Matthew C. Ellis
**MATTHEW C ELLIS**
OSB No. #075800
(503) 345-5497

/s J. Ashlee Albies
**J. ASHLEE ALBIES**
OSB No. #051846
(503) 308-4770

Of Attorneys for Plaintiff

Plaintiff demands a trial by jury.

By /s Matthew C. Ellis
**MATTHEW C ELLIS**
OSB No. #075800
(503) 345-5497

/s J. Ashlee Albies
**J. ASHLEE ALBIES**
OSB No. #051846
(503) 308-4770